11 N.J. Super. 305 (1951)
78 A.2d 303
JULIUS ERDO, PLAINTIFF-RESPONDENT,
v.
FRANK STAHLIN AND ROBERT STAHLIN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 2, 1951.
Decided January 10, 1951.
*306 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. John Winans argued the cause for appellants (Messrs. Winans, Crane & Crane, attorneys).
Mr. Matthew F. Melko argued the cause for respondent.
The opinion of the court was delivered by WM. J. BRENNAN, JR., J.A.D.
The judgment in plaintiff's favor, entered upon a jury verdict after a new trial as *307 to damages only, must be reversed. The trial court erred in granting plaintiff's motion for a new trial as to damages only as it does not sufficiently appear the error committed as to damages by the first jury was so limited as clearly to make the issue of damages separable from the issue of liability; rather, in the circumstances of the case, the first verdict manifests an improper compromise on the basic issue of liability.
Plaintiff sued defendants in the Middlesex County Court alleging that defendants in May, 1948, blocked the downstream end of a culvert causing the water to back up and overflow on plaintiff's lands with the result that the foundation walls and footings of a building being constructed by plaintiff were caused to sink, crack and break up and his lands generally to be flooded. The defendants freely admitted at the trial that they blocked the culvert but justified their action as necessary to abate a nuisance allegedly caused by plaintiff's suffering large quantities of household sewage, unsanitary and contaminated water and water containing large quantities of deleterious, wholly or partially decayed matter and substances deleterious to the health and well being of defendants and members of their families, to flow out of plaintiff's property into the culvert and upon defendant's land. They and their wives counterclaimed for personal injuries allegedly suffered as a consequence of plaintiff's alleged wrong.
Plaintiff and defendants live on opposite sides of Oak Tree Road, Raritan Township. The culvert crosses underneath the road. Plaintiff started in the spring or summer of 1947 to build a dwelling, not for his own use, but to rent, at the northwest corner of Dark Lane. He did most of the work himself, aided by members of his family. The building was partially completed when he stopped work in the fall of 1947 because of the onset of winter. Defendants blocked the culvert in May, 1948, and it is at that time, according to plaintiff, the foundation of the partially built house was damaged by the water which he alleged backed up on his lands and entered the cellar through a drain pipe.
Defendants' proofs sharply controverted plaintiff's claim that the damage to the foundation was caused by water backing *308 up from the choked culvert. Defendants' evidence tended to show that the elevation of plaintiff's lands above the culvert made the backing up of the water upon his land a physical impossibility and that the damage was in fact attributable to the building of the foundation as a "homemade" job by plaintiff and his son in a poor manner upon marshy land unsuited for the purpose, causing it to settle and crack sometime before May, 1948. Defendants' evidence was that from the time the excavation work began there was water in the excavation constantly or at frequent intervals, that its bottom was muddy and so soft that many months before May, 1948, the bulldozer used in the excavating became mired in the mud in the excavation and at another time became mired so deeply when filling in the earth around the house that it could not be removed by its own power, that the plaintiff sometime in the spring of 1948, before the blocking of the culvert in May, was required to make use of an electric pump to pump out the water in the excavation.
We do not have the benefit in the appellants' appendix of all the testimony at the first trial. The respective factual contentions of the parties on the question of liability, which we have summarized, can, however, be discerned in the record before us.
The only testimony at the first trial as to the amount of damages to the foundation was that offered on plaintiff's behalf by an engineer and surveyor. He described the condition of the foundation as he observed it in September, 1949, and stated his opinion that the cost of removing and replacing the foundation was $1,850, saying that the whole foundation would have to be removed and the house shored up while a new foundation was built. There were no proofs on defendants' behalf to contradict this expert's evidence either as to the necessity for complete replacement of the foundation or as to the estimated cost of doing the work.
The jury deliberated for several hours after being given the case at about 11:30 o'clock on the morning of the day the trial ended, and returned to the courtroom about 3:30 o'clock in the afternoon and advised the trial judge they could not *309 agree. The trial judge directed that they deliberate for another half hour, or until 4:00 o'clock and report again. The jury returned at five minutes after four and announced a verdict in plaintiff's favor in the amount of $625 and a verdict of no cause for action on the defendants' counterclaim.
Plaintiff duly noticed a motion for a new trial "as to damages only" on the ground that the verdict "of $625 rendered in favor of the plaintiff and against the defendants is grossly inadequate." Defendants noticed a counter-motion for a new trial on the ground of newly discovered evidence. The trial judge reserved decision on both motions until December 28, 1949, when he filed an opinion denying defendants' motion and granting plaintiff's motion for a new trial as to damages only. The reason given in the trial court's opinion for granting plaintiff's motion was that "the jury having found that the plaintiff was entitled to a verdict, it should have been in an amount of $1,850 plus a small allowance for loss of rent, less the difference in value between a first-class foundation and the existing foundation built by the plaintiff, with the aid of his son." The new trial resulted in a verdict of $960 in plaintiff's favor, and this appeal from the judgment entered thereon brings up the question whether the new trial for damages only was properly granted.
Plaintiff's motion was addressed to a discretionary power of the trial judge, Rule 3:59-1, which was to be exercised, however, not according to whim or caprice, but by sound application of rules of law controlling the determination of the motion, and when it appears, as here, that judicial discretion was not properly exercised because the trial judge failed correctly to apply such rules, and it further appears his error injuriously affected the substantial rights of the defendants, we are empowered on appeal to reverse his action. Cf. Cortese v. Cortese, 10 N.J. Super. 152 (App. Div. 1950); Rule 3:59-5, as amended. The granting of a new trial limited to damages is proper only when it plainly appears that the issue of damages is separable, that is, that the case is one "where it is certain that the error which resulted in * * * inadequate damages did not affect the other issues." Robinson v. *310 Payne, 99 N.J.L. 135 (E. & A. 1923); Esposito v. Lazar, 2 N.J. 257 (1949); Rempfer v. Deerfield Packing Corp., 4 N.J. 135 (1950); Juliano v. Abeles, 114 N.J.L. 510 (Sup. Ct. 1935); Stalter v. Schuyler, 135 N.J.L. 228 (Sup. Ct. 1947). The controlling principle as stated in Juliano v. Abeles, supra, has been reaffirmed by the Supreme Court in Esposito v. Lazar, supra (2 N.J., at 260):
"The new trial cannot be narrowed to the quantum of damages unless it is plain that the error committed at the trial `was so limited in character as with justice to both parties to be separable from the other issues determined by the first verdict.' * * * It is a corollary of the foregoing that if the case under consideration exhibits a compromise verdict on the fundamental issue of liability, the error taints the whole verdict, and a new trial of the entire issue is required. The law contemplates that juries shall, by discussion, harmonize their views, if possible, but not that they shall `compromise, divide and yield for the mere purpose of an agreement;' * * *. Such conduct in the jury room is subversive of the basic principles of trial by jury; a verdict resulting from a compromise of this nature is wholly invalid. Granting a new trial as to damages in such circumstances would work grave injustice to the defendant; for it would deprive him of his constitutional right to a determination of the issue of liability by a jury in accordance with established principles.
The question whether defendants' blocking of the culvert in fact caused the water condition which damaged the foundation was sharply contested. We are persuaded that the jurors' verdict in an amount having no relation to the plaintiff's uncontradicted proofs of the amount of damages, particularly when laid in the setting of their initial disagreement on the question of liability followed by a verdict brought back five minutes after the time limited by the court for their further deliberations, shows that here, too, "the jury resolved this question (of liability) against (defendants) by the expediency of offsetting the doubt by awarding inadequate damages," Esposito v. Lazar, supra. The facts clearly did not supply a rational basis for a finding of certainty by the trial court that the jury's error which resulted in the inadequate damages did not affect the issue of liability, but on the contrary the facts supply a plain inference that the verdict for $625 was a compromise verdict on the question of defendants' *311 liability. The jury cannot be considered to have settled the question of liability fairly so that the finding of liability may with justice to the defendants be deemed separable from the issue of the quantum of damages, and "disassociated from other questions, it ought to stand." Robinson v. Payne, supra. The verdict was therefore invalid, and the trial court erred in granting plaintiff's motion limiting the new trial to damages only.
Our conclusion makes it unnecessary to decide the other points argued in the defendants' brief. We record our view, however, that the trial court fell into error by unduly restricting defendants' proofs at the second trial. Both sides tried the case as to damages on the theory that in the circumstances shown the measure of plaintiff's damages was the difference in the value of the foundation before and after the damages alleged to have proximately resulted from defendants' act in blocking the culvert. An essential element of proof on this theory of damages was the condition of the foundation before defendants' act. This question of prior condition was in dispute and defendants were improperly denied the opportunity to adduce proofs supporting their position that the foundation was already substantially damaged from other causes before they blocked the culvert.
Reversed and remanded for a new trial on all issues.